# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **ALEXIS BIANCA ADAMS, et al.** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | **CASE NO.2:26-cv-00050-CWB** |
| **v.** | **)** | |
| | **)** | **JURY TRIAL DEMANDED** |
| **AGRI STATS, INC., et al.** | **)** | |
| | **)** | |
| **Defendants.[1]** | **)** | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Pursuant to this Court's Order [Doc. 63], all remaining Defendants join this Opposition to Plaintiffs' Motion to Remand [Doc. 62]. The Motion to Remand should be denied for the reasons that follow.

---

[1] Defendants Cargill Meat Solutions, Inc., Continental Grain Company, Pilgrim's Pride Corp., Peco Foods, Inc., and Tyson Foods, Inc. have been dismissed. *See* [Doc. 1-6, p. 754-756; Doc. 64, 65, 66].

# Table of Contents

Introduction ........................................................................................................1

Argument.............................................................................................................2

1.  The Removal Notice Demonstrated Federal Question Jurisdiction. ....................2

   A. Removal Notice *Grable* Factor Checklist .......................................................3

     *Grable* prongs 1, 2 √ .................................................................................3

     *Grable* prong 3 √ .......................................................................................5

     *Grable* prong 4 √ .......................................................................................9

   B. No Controlling or Persuasive Authority Against Removal ..........................10

   C. An Abundance of Persuasive Authority Supports Removal ........................13

2.  The Remand Motion Imagines Alabama Law that Does
Not Exist. .......................................................................................................15

3.  The Remand Motion Imagines a Preemption Argument that
Defendants Did Not Make. ...............................................................................17

4.  The Remand Motion Imagines a Complaint that the Plaintiffs
Did Not File. .....................................................................................................18

5.  The Remand Motion Fails to Acknowledge that Plaintiffs' Success
Requires Federal Law Developments................................................................23

6.  Fees and Costs.................................................................................................26

Conclusion ..........................................................................................................28

# Table of Authorities

**Page(s)**

**Cases**

*Abbott Laboratories v. Durrett*,
 746 So. 2d 316 (Ala. 1999) .................................................................................. 16
*Adventure Outdoors, Inc. v. Bloomberg*,
 552 F.3d 1290 (11th Cir. 2008) ...................................................................... 10, 11
*AEP Excluded Assetco, LLC v. Bellaenergy, LLC*,
 2024 WL 385695 (S.D. Tex. Feb. 1, 2024) ......................................................... 13
*Am. Needle, Inc. v. Nat'l Football League*,
 560 U.S. 183 (2010) ............................................................................................. 21
*Am. Proteins, Inc. v. River Valley Ingredients, LLC*,
 640 F. Supp. 3d 1364 (N.D. Ga. 2022) ............................................................... 20
*Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc.*,
 746 So. 2d 966 (Ala. 1999) .................................................................................. 16
*AST & Sci. LLC v. Delclaux Partners SA*,
 143 F.4th 1249 (11th Cir. 2025) ............................................................................ 6
*Automotive Alignment & Body Service, Inc. v. State Farm Mut. Auto. Ins. Co.*,
 953 F.3d 707 (11th Cir. 2020) ............................................................................. 21
*Baird v. PPG Indus., Inc.*,
 2017 WL 1300222 (N.D. Ala. Apr. 7, 2017) ........................................... 10, 12, 23
*Ball v. Baker*,
 2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022) ............................................... 2, 14
*Baptist Hosp. of Miami*,
 2011 WL 2084003 (S.D. FL May 23, 2011) ........................................................ 27
*Baugh v. Austal USA, LLC*,
 2023 WL 2873381 (S.D. Ala. Apr. 10, 2023) ..................................................... 15
*Beaulieu Group, LLC v. Mohawk Carpet Distrib., Inc.*,
 2016 WL 11745981 (N.D. Ga. Aug. 3, 2016) ..................................................... 18
*Board of Commissioners of the Southeast Louisiana Flood Protection Authority-
 East v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017) .......... 4
*Broder v. Cablevision Sys. Corp.*,
 418 F.3d 187 (2d Cir. 2005) ..................................................................... 6, 7, 8, 14
*Brown v. Pro Football, Inc.*,
 518 U.S. 231 (1996) ....................................................................................... 21, 25
*California v. ARC Am. Corp.*,
 490 U.S. 93 (1999) ............................................................................................... 10

*City of Tuscaloosa v. Harcros Chems., Inc.*,
 158 F.3d 548 (11th Cir. 1998)...................................................................... 4, 5

*Clarett v. Nat'l Football League*,
 369 F.3d 124 (2d Cir. 2004) ............................................................................ 25

*Coleman v. NPC Int'l Inc.*,
 2009 WL 10675080 (N.D. Fla. Mar. 4. 2009) ................................................ 20

*Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union 100*,
 421 U.S. 616 (1975) ....................................................................................... 25

*Danner Constr. Co. v. Hillsborough Cnty., Fla.*,
 608 F.3d 809 (11th Cir. 2010)............................................................... 10, 11, 12

*DCH Health Care Auth. v. Purdue Pharma L.P.*,
 2019 WL 6493932 (S.D. Ala. Dec. 3, 2019) ................................................ 10, 12

*Deerman v. Fed. Home Loan Mortg. Corp.*,
 955 F. Supp. 1393 (N.D. Ala. 1997) ................................................................ 16

*Dentson v. Eddie & Lee Bus Sales, Inc.*,
 491 So. 2d 942 (Ala. 1986) .............................................................................. 17

*Edwards v. Deloitte & Touche, LLP*,
 2017 WL 1291994 (S.D. Fla. Jan. 18, 2017) ................................................... 14

*Elder v. E.I. DuPont de Nemours and Co., Inc.*,
 479 So. 2d 1243 (Ala. 1985) ............................................................................ 23

*Ex Parte James*,
 836 So. 2d 813 (Ala. 2002) .............................................................................. 17

*Ex Parte Jenkins*,
 723 So.2d 649 (Ala. 1998) ............................................................................... 17

*Ex parte Rice*,
 67 So. 2d 825 (Ala. 1953) .................................................................................. 4

*Falkner v. Ovum Med., LLC*,
 2025 WL 2684403 (S.D. Ala. July 11, 2025) ..................................................... 5

*Falkner v. Ovum Med., LLC*,
2025 WL 2684352 (S.D. Ala. Aug. 13, 2025) ..................................................... 5

*Fla. Dep't of Fin. Servs. v. Universal Health Care Ins.*,
 2008 WL 268802 (N.D. Fla. Jan. 30, 2008) ..................................................... 27

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
 545 U.S. 308 (2005)............................................... 2, 3, 4, 5, 6, 7, 8, 9. 10, 23, 26

*Grant v. Butler*,
 590 So. 2d 254 (Ala. 1991) .............................................................................. 15

*Gray v. New York Life Ins. Co.*,
 906 F. Supp. 628 (N.D. Ala. 1995) .............................................................. 10, 26

*Gunn v. Minton*,
 568 U.S. 251 (2013)......................................................................................... 3, 6

*Hart v. Suarez*,
2024 WL 1941682 (M.D. Ala. May 2, 2024) ...................................................... 18

*Hawkins v. SSM Health Care Corp.*,
2023 WL 4363901 (E.D. Mo. July 6, 2023) ...................................................... 13

*Healy v. Ratta*,
292 U.S. 263 (1934) ...................................................... 10

*Hinson v. Chelsea Indus., Inc.*,
542 F. Supp. 2d 1236 (M.D. Ala. 2008) ...................................................... 28

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ...................................................... 1

*In re Blue Cross Blue Shield Antitrust Litig.*,
225 F. Supp. 3d 1269 (N.D. Ala. 2016) ...................................................... 9

*In Re Broiler Chicken Grower Antitrust Litig.*,
2024 WL 2194349 (E.D. Okla. May 15, 2024) ...................................................... 21

*In Re Granulated Sugar Antitrust Litig.*,
737 F.Supp.3d 1370 (MDL No. 3110 2024) ...................................................... 20

*In Re Nat'l Football League Sunday Ticket Antitrust Litig.*,
2016 WL 1192642 (C.D. Cal. Mar. 28, 2016) ...................................................... 14, 22

*In Re Wholesale Grocery Prods. Antitrust Litig.*,
2018 WL 3862773 (D. Minn. Aug. 14, 2018) ...................................................... 21

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
626 F.3d 1327 (11th Cir. 2010) ...................................................... 25

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.*,
735 F.2d 414 (11th Cir. 1984) ...................................................... 25

*L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*,
813 F.2d 332 (11th Cir. 1987) ...................................................... 10

*Ladies Mem. Assoc., Inc. v. City of Pensacola,
Fl.*, 662 F. Supp. 3d 1212 (N.D. Fla. 2023) ...................................................... 27

*Lands v. Ward*,
349 So. 3d 219 (Ala. 2021) ...................................................... 23

*Langford v. Richardson*,
2020 WL 1235529 (N.D. Ala. Mar. 13, 2020) ...................................................... 10, 13

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) ...................................................... 20

*Lewis v. Tulalip Hous. Ltd. P'ship No. 3*,
2011 WL 6140881 (W.D.Wash. Dec. 9, 2011) ...................................................... 27

*Lovelace v. Amerada Hess Corp.*,
1997 WL 33806580 (S.D. Ala. Apr. 1, 1997) ...................................................... 10, 23

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005) ...................................................... 26

*Meyer v. Health Mgt. Assoc., Inc.*,
841 F. Supp. 2d 1262 (S.D. Fla. 2012) ...................................................... 26, 27

*Miami Beach Cosmetic and Plastic Surgery Center v. Blue Cross and Blue Shield of Florida, Inc.*, 947 F. Supp. 2d 1375 (S.D. Fla. 2013) ...................................... 27

*Minnesota v. Fleet Farm LLC*,
679 F. Supp. 3d 825 (D. Minn. 2023) ...................................................... 14

*Mobile Cnty. Bd. of Health v. Sackler*,
2020 WL 223618 (S.D. Ala. Jan. 15, 2020) ...................................... 10, 13

*N. Secs. Co. v. U.S.*,
193 U.S. 197 (1904) ...................................................... 21

*Natchitoches Parish Hosp. Service Dist. V. Tyco Int'l, Ltd.*,
2009 WL 4061631 (D. Mass. Nov. 20, 2009) ...................................... 21

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*,
468 U.S. 85 (1984) ...................................................... 21

*Nat'l Soc'y of Pro. Eng'rs v. U.S.*,
435 U.S. 679 (1978) ...................................................... 24

*New Prime, Inc. v. Eaton Corporation*,
2017 WL 5992466 (W.D. Mo. March 16, 2017) ...................................... 1

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018) ...................................................... 21

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*,
559 F.3d 772 (8th Cir. 2009) ...................................................... 14

*Procaps S.A. v. Patheon, Inc.*,
845 F.3d 1072 (11th Cir. 2016) ...................................................... 25

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
407 F. Supp. 3d 1216 (N.D. Ala. 2019) ...................................... 21

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
2019 WL 4686353 (N.D. Ala. Feb. 28, 2019) ...................................... 28

*Rosenman v. Facebook, Inc.*,
2021 WL 3829549 (N.D. Cal. Aug. 27, 2021) ...................................... 6, 7, 8

*Schleider v. GVDB Operations, LLC*,
121 F.4th 149 (11th Cir. 2024) ...................................................... 3

*State Oil Co. v. Khan*,
522 U.S. 3 (1997) ...................................................... 24

*Thompson v. Alabama*,
428 F. Supp. 3d 1296 (M.D. Ala. 2019) ...................................... 28

*U.S. v. Socony-Vacuum Oil Co.*,
310 U.S. 150 (1940) ...................................................... 20

*U.S. v. U.S. Gypsum Co.*,
438 U.S. 422 (1978) ...................................................... 24

*Univ. of S. Alabama v. Am. Tobacco Co.*,
168 F.3d 405 (11th Cir. 1999)............................................................... 10

*Vandenberg v. Aramark Educ. Servs., Inc.*,
81 So. 3d 326 (Ala. 2011) ............................................................ 16, 17

*White v. State Farm Mut. Auto. Ins. Co.*,
2012 WL 13102525 (M.D. Fla. May 16, 2012)................................... 20

*Willmore-Cochran v. Wal-Mart Assocs., Inc.*,
919 F. Supp. 2d 1222 (N.D. Ala. 2013)............................................... 15

*Wullschleger v. Royal Canin U.S.A., Inc.*,
953 F.3d 519 (8th Cir. 2020).......................................................... 6, 7, 9

## Statutes

15 U.S.C. §1 ................................................................................... 20, 21
15 U.S.C. § 17 ...................................................................................... 25
28 U.S.C. § 1447 .................................................................................. 26
47 U.S.C. § 543 ...................................................................................... 8
Ala. Code § 6-5-60................................................................................ 16

## Rules

Fed. R. Evid. 408 ................................................................................. 20

## Introduction

Opting-out of the poultry industry federal antitrust class action *Judy Jien, et al. v. Perdue Farms, Inc., et al.*, D. Md. 1:19-cv-02521-SAG,[2] Plaintiffs lost the benefit of its settlement[3] but then failed to file timely suits of their own. Instead, they filed this Complaint, recharacterizing the *Jien* federal antitrust claims as Alabama torts.

The *Jien* plaintiffs' essential assertion was that, for decades, major poultry processors colluded with each other to standardize wage rates, stifling wage competition. Complaint, Doc. 1-1, p. 41, ¶ 5. Plaintiffs repeat the basic *Jien* allegations, artfully re-pleading them as – fraud (Count I), unjust enrichment (Count II), negligence (Count III), wantonness (Count IV), civil conspiracy (Count V), outrage (Count VI), intentional interference with a business relationship (Count VII),[4] and vicarious liability (Count VIII).[5] Because the Complaint requires Plaintiffs to prove a federal antitrust law violation, Defendants timely removed this matter on January 23, 2026. [Doc. 1.]

---

[2] *See Jien* PACER docket [Dkt.] 1, Complaint filed August 30, 2019.

[3] *See Jien* PACER Dkt. 1001, order granting final approval of all processor settlements, entered June 5, 2025; *Jien* PACER Dkt. 1039, order granting final approval of Agri Stats settlement, entered March 10, 2026.

[4] Count VII is not asserted against the Defendant chicken processors.

[5] These Plaintiffs are not the first to try to avoid federal antitrust law problems by dressing their claims in state tort clothing. *See New Prime, Inc. v. Eaton Corporation*, 2017 WL 5992466, at *3 (W.D. Mo. March 16, 2017) (gathering examples of indirect purchasers doing the same to evade the federal limitation on antitrust damages remedies to direct purchasers recognized in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

The Parties agree that *Grable*[6] controls this removal dispute and agree that Defendants bear the burden to demonstrate federal question jurisdiction as required by *Grable*.[7]

The Removal Notice [Doc. 1] made the *Grable* case for federal question jurisdiction. The Plaintiffs' critique [Doc. 62] is unpersuasive for five reasons: (1) the Removal Notice's legal analysis was correct; (2) Plaintiffs imagine Alabama law that does not exist; (3) Plaintiffs imagine a preemption argument that Defendants did not make; (4) Plaintiffs imagine a complaint that they did not file; (5) Plaintiffs fail to acknowledge the federalism problem of state judges developing federal law as required by Plaintiffs' actual pleading.

## Argument

### 1. The Removal Notice Demonstrated Federal Question Jurisdiction.

Under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 311 (2005), federal question removal of a state law action is proper if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved

---

[6] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 311 (2005), cited as controlling authority in the Removal Notice [Doc. 1, at 2, lines 13-14] and in the remand motion brief [Doc. 62, at 12, lines 6-7].

[7] It's not clear how far Plaintiffs would push this but, should they so contend, Defendants observe, for the reasons explained in *Ball v. Baker*, 2022 WL 17808785, at *3 (S.D.N.Y. Dec. 18, 2022), that the Court's duty to resolve doubts against asserting jurisdiction does not establish a removal duty to prove jurisdiction beyond a reasonable doubt.

by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 315). *See also Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 156 (11th Cir. 2024) ("[E] ven if a plaintiff has pled only state-law claims, a plaintiff may not avoid federal jurisdiction if … the state-law claims raise substantial questions of federal law).

A. Removal Notice *Grable* Factor Checklist

*Grable* prongs 1, 2 √.  Plaintiffs' claims all require some form of legally recognized unlawful conduct, for example, a breach of a duty to support a finding of negligence, an unlawful agreement or an unlawful objective of a conspiracy, or outrageous conduct required for recovery based on emotional distress. Plaintiffs' attempt to meet these elements by alleging that the Defendants, nationwide chicken processors, colluded to restrain competition for Plaintiffs' labor, suppressing their wages.  Plaintiffs' problem, and the reason removal is appropriate, is that Alabama antitrust law does not govern this conduct; federal antitrust law does.

If the alleged conspiracy had been confined to Alabama, Alabama courts might recognize a right to relief under the Alabama antitrust statutes. But Plaintiffs did not assert a claim under Alabama antitrust statutes and, as explained in the following section of Argument, Alabama law has not recognized any other right to relief from antitrust injuries.

The remand motion brief [Doc. 62, p. 5, lines 12-13] disavows reliance on the Alabama antitrust statutes because Alabama antitrust law does not govern the conduct by which Plaintiffs allege they were harmed. Therefore, Plaintiffs must rely on federal antitrust law to supply essential elements of their tort claims for relief from antitrust injuries – *i.e.*, the fraudulent concealment of the antitrust violation, the negligence duty of care, the unlawful object of the alleged civil conspiracy, the outrageousness required for emotional distress recovery, etc. A federal antitrust issue is necessarily raised and actually disputed in the Complaint, satisfying *Grable* prongs 1 and 2. *See Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 723 (5th Cir. 2017) (negligence and nuisance claims necessarily raised federal issues since the claims could not be resolved "without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law").

To support the first and second *Grable* factors, the Notice of Removal cited *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 555 n.8 (11th Cir. 1998) (quoting *Ex parte Rice*, 67 So. 2d 825, 829 (Ala. 1953)), which held that "[u]nder Alabama law, federal antitrust law 'prescribe[s] the terms of unlawful … restraints of trade as they should … be administered in Alabama.'" The remand motion says nothing about the Eleventh Circuit's holding and unsuccessfully attempts to distinguish the *Rice* case, claiming the Alabama Supreme Court "simply adopted

federal antitrust standards as Alabama common law." [Doc. 62, p. 9]. But that argument proves too much. First, it reads the Alabama antitrust statute, which the legislature chose to limit to intrastate commerce, out of existence. Second, it ignores the controlling Eleventh Circuit holding: "the relevant federal law … therefore applies to and controls our disposition of the plaintiffs' state-law antitrust claims as well as their federal antitrust claims." *Harcros Chems., Inc.*, 158 F.3d at 555 n.8.

The Notice of Removal also relied upon *Falkner v. Ovum Med., LLC*, 2025 WL 2684403, at *3 (S.D. Ala. July 11, 2025), *report and recommendation adopted*, 2025 WL 2684352 (S.D. Ala. Aug. 13, 2025), which found federal question jurisdiction because the plaintiffs' state law contract breach claim necessarily depended on proving patent infringement. Plaintiffs' remand brief asserts that *Falkner* is irrelevant because "patent issues are governed exclusively by federal law." [Doc. 62, p. 9]. So are interstate antitrust conspiracies, in Alabama. *See* Section 2 *infra*. Thus, a federal issue is necessarily raised and actually disputed here.

<u>*Grable* prong 3 √</u>. Courts weigh three factors when considering *Grable's* substantiality prong:

> First, a pure question of law is more likely to be a substantial federal question. Second, a question that will control many other cases is more likely to be a substantial federal question. Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question.

*AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1253 (11th Cir. 2025) (citation omitted). As explained below and in Defendants' Notice of Removal, these factors support federal jurisdiction here. *See Gunn v. Minton*, 568 U.S. 251 (2013); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (finding substantial federal question where breach of contract claim required court to judge conduct based on federal statutory scheme); *Rosenman v. Facebook, Inc.*, 2021 WL 3829549, at * 4-6 (N.D. Cal. Aug. 27, 2021) (finding state law claim to involve substantial antitrust issue where state antitrust statute did not cover conduct alleged); *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (finding state law claim premised on conduct prohibited by federal law to include substantial federal question).

Plaintiffs support every Alabama tort claim by alleging that Defendants' unlawful, interstate conspiracy unlawfully restrained competition for Plaintiffs' labor, suppressing their wages. *See* Compl., [Doc. 1-1] at pp. 41-45. For example, Plaintiffs' negligence claim hinges upon whether, as a matter of law, an employer can owe a legal duty to an employee "not to engage in conduct that would unlawfully restrain trade and artificially suppress wages." *Id*. at p. 43. That is a "pure question of law." "[A] federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law[.]" *Grable*, 545 U.S. at 312.

Judicial solutions to these federal antitrust puzzles will affect other cases already pending in this District[8] and perhaps others yet to be filed. Thousands of similarly situated Plaintiffs[9] opted-out of the *Jien* class action. *See Jien et al. v. Perdue Farms, Inc. et al.*, No. 1:19-cv-2521-SAG, D.E. 1006-16 (D. Md.) (opt-out list). A federal court should judge the federal antitrust issues that will determine the rights of all *Jien* opt-outs.

Plaintiffs argue that the substantiality factor weighs against federal jurisdiction, citing <u>no</u> authority. [*See* Doc. 62, p. 13, lines 7-14]. Their putative distinctions of *Broder*, *Rosenman*, and *Wullschleger* are also unavailing. The *Broder* court specifically held that the federal question was substantial to plaintiffs' contract breach claim because it "involve[d] aspects of the complex federal regulatory scheme[.]" 418 F.3d at 195. Plaintiffs' argument about "a statute with no private cause of action" is a self-own. [Doc. 62, p.15]. Alabama provides no private cause of action for *inter*state antitrust violations. *See* Section 2 *infra*.

In *Broder*, the Second Circuit found that the substantiality prong of the *Grable* test was satisfied where the plaintiff's state law claims required interpretation of a "complex federal regulatory scheme" – namely, the cable television rate provisions

---

[8] *See Anglin, et al. v. Agri Stats, Inc., et al.*, Case No. 2:26-cv-54-BL (M.D. Ala.); *Ayers, et al. v. Agri Stats, et al.*, Case No. 2:26-cv-92-RAH (M.D. Ala.).
[9] Exhibit 1 to this Motion, Plaintiffs' May 25 litigation threat letter, asserted that Plaintiffs' counsel represents 3,500 *Jien* opt-outs.

of 47 U.S.C. § 543 – "as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" 418 F.3d at 195. The same reasoning applies here. Plaintiffs' claims require the Court to determine whether Defendants' alleged wage-fixing conduct – including data exchanges among competitors, use of third-party consultants to facilitate information sharing, and "sham anonymization" techniques – constitutes a violation of the Sherman Act's prohibition on horizontal agreements to fix prices or wages. These questions implicate the sophisticated body of federal antitrust jurisprudence governing competitor information exchanges, including whether such conduct constitutes a per se violation or is subject to rule of reason analysis. Just as in *Broder*, where the court recognized that questions involving the complex federal regulatory scheme for cable rates warranted federal jurisdiction, the federal antitrust issues embedded in Plaintiffs' Complaint present substantial questions that support federal question jurisdiction – there is unquestionably "a serious federal interest" in having federal courts resolve claims that, at their core, allege violations of the Sherman Act.

Next Plaintiffs claim that *Rosenman* does not support the *Grable* "substantial factor" prong because *Rosenman* "necessarily implicated federal antitrust law under Section 2 of the Sherman Act, where no parallel provision existed under California law." [Doc. 62, p.16]. Substitute "Alabama" for "California," and the same is true

here. *See* Section 2 *infra*. Alabama law provides no remedy for the interstate antitrust violations Plaintiffs have alleged.

Finally, Plaintiffs attack *Wullschleger* as irrelevant because those plaintiffs relied extensively on federal law. [Doc. 62, p.17]. So do Plaintiffs here; they cannot prevail on their Alabama claims without proving a federal antitrust conspiracy. Alabama antitrust statutes do not reach the interstate allegations pled. *See* Section 2 *infra*. The *Grable* "substantial" factor is satisfied.

*Grable* prong 4 √. Finally, the potential for inconsistent rulings would disserve the federal interest "in enforcing antitrust laws as 'both familiar and substantial,' as the antitrust laws preserve 'economic freedom and our free-enterprise system.'" *In re Blue Cross Blue Shield Antitrust Litig.,* 225 F. Supp. 3d 1269, 1300 (N.D. Ala. 2016) (internal citation omitted). This case begins and ends with an analysis of the federal antitrust laws and the duties they impose upon Defendants. Thus, this Court's necessary analysis of federal antitrust law does not disrupt the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. It adheres to that balance. We flesh this out further under heading 4 below.

Because Plaintiffs' claims raise substantial questions of federal antitrust law, Defendants timely and properly removed this matter under *Grable*.

B. <u>No Controlling or Persuasive Authority Against Removal</u>

*Grable* unquestionably expanded federal question removal jurisdiction. Yet the remand motion brief [Doc. 62] materially relies on nine pre-*Grable* remand opinions,[10] two of which addressed diversity jurisdiction.[11] None is governing or even persuasive authority. The remand motion brief cites six opinions[12] published after *Grable*; none is controlling and each is easily distinguished.

In *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008),[13] New York City officials removed a Georgia negligence and defamation suit, defeated the ensuing remand motion and won a partial dismissal. The Eleventh Circuit reversed and remanded with instructions, holding: (1) "any conceivable legal

---

[10] *See California v. ARC Am. Corp.*, 490 U.S. 93 (1999) (pre-*Grable*, cited at Doc. 62, p. 5, line 7); *L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 813 F.2d 332 (11th Cir. 1987), *decision clarified on denial of reh'g sub nom. L.A. Draper & Son, Inc. v. Wheelbrator-Frye, Inc.*, 821 F.2d 590 (11th Cir. 1987) (pre-*Grable*, cited at Doc. 62, p. 7, lines 10-12); *Lovelace v. Amerada Hess Corp.*, 1997 WL 33806580, at *1 (S.D. Ala. Apr. 1, 1997) (pre-*Grable*, cited at Doc. 62, p. 11, line 5); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999) (pre-*Grable*, cited at Doc. 62, p. 21-22, lines 20 and 1); *Healy v. Ratta*, 292 U.S. 263, 270 (1934) (pre-*Grable*, cited at Doc. 62, p. 22, lines 6-9); *Gray v. New York Life Ins. Co.*, 906 F. Supp. 628, 629 (N.D. Ala. 1995) (pre-*Grable*, cited at Doc. 62, pp. 23-24, lines *passim*). Because these cases were decided pre-*Grable*, they do not help the Court decide whether removal under *Grable* was proper.

[11] *See Healy*, 292 U.S. at 270 (diversity jurisdiction, pre-*Grable*, cited at Doc. 62, p. 22, lines 6-9); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999) (diversity jurisdiction, pre-*Grable,* cited at Doc. 62, p. 21-22, lines 20 and 1). Because these pre-*Gable* cases discuss the propriety of diversity jurisdiction, which is not at issue here, they should be disregarded.

[12] *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008); *Danner Constr. Co. v. Hillsborough Cnty., Fla.*, 608 F.3d 809, 814 (11th Cir. 2010); *Baird v. PPG Indus., Inc.*, 2017 WL 1300222, at *1 (N.D. Ala. Apr. 7, 2017); *DCH Health Care Auth. v. Purdue Pharma L.P.*, 2019 WL 6493932, at *1 (S.D. Ala. Dec. 3, 2019); *Mobile Cnty. Bd. of Health v. Sackler*, 2020 WL 223618, at *6 (S.D. Ala. Jan. 15, 2020); *Langford v. Richardson*, 2020 WL 1235529, at *3 (N.D. Ala. Mar. 13, 2020).

[13] Plaintiffs' remand motion brief [Doc. 62] cites *Adventure Outdoors* at p. 1, line 10; p. 3, line 3; p. 7, line 16; p.12, line 2; p. 18, line 18.

duty the New York defendants owed the plaintiffs exists independently of federal law";[14] (2) "Because we do not believe that that plaintiffs' negligence claims necessarily raise a federal issue, we conclude that the negligence-related claims do not provide a sufficient basis for the exercise of federal jurisdiction"[15]; (3) "The district court concluded that the plaintiffs' defamation claims raise a disputed federal issue, reasoning that resolution of these claims would require consideration of whether the plaintiffs broke federal law by participating in a simulated straw purchase. We agree."[16]

Plaintiffs [Doc. 62, p. 1] initially cite *Adventure Outdoors* for the undisputed standard of review. Yet their next four invocations of *Adventure Outdoors* do not discuss the case facts or recite its specific holdings. The Plaintiffs' favorite conclusion of *Adventure Outdoors* – that "the existence of a legal duty and whether defendants breached that duty could be resolved without applying federal law" – supports removal rather than remand because the Court here must apply federal antitrust law to resolve Plaintiffs' claims.

*Danner Const. Co. v. Hillsborough Cnty., Fla.*, 608 F.3d 809, 813 (11th Cir. 2010), cited at remand motion brief [Doc. 62, p. 5, lines 9-11], was a Sherman Act challenge to a local government action. The Eleventh Circuit reversed and remanded

---

[14] *See* 552 F.3d 1290, 1297 (11th Cir. 2008).
[15] *See* 552 F.3d at 1298.
[16] *Id.*

a District Court denial of a defense motion to dismiss based on state action immunity. Plaintiffs cited *Danner* to refute a preemption argument that Defendants have not made, as explained under heading 3 below.

In *Baird v. PPG Indus., Inc.*, 2017 WL 1300222 (N.D. Ala. Apr. 7, 2017), the plaintiffs asserted RICO, Sherman Act, and state-law antitrust claims. Defendants removed and, only *after* the federal claims were dismissed, did the court remand the state claims. Plaintiffs then amended to re-plead under the Alabama antitrust statutes, expressly disavowing federal law reliance. Defendants again removed, arguing federal jurisdiction arising from the asserted overlap of Alabama and federal antitrust laws. Because the *Baird* plaintiffs' claims were asserted under Alabama antitrust statutes and they disavowed Sherman Act reliance, the court again remanded. Had our Plaintiffs sued under Alabama antitrust statutes, disavowing reliance on federal law, *Baird* might be persuasive, but they didn't, so it isn't.

In *DCH Health Care Auth. v. Purdue Pharma L.P.*, 2019 WL 6493932 (S.D. Ala. Dec. 3, 2019), the plaintiffs state tort claims for opioid addiction harms referenced the Controlled Substances Act (CSA), provoking removal. The court remanded because plaintiffs independently relied on the Alabama Uniform Controlled Substances Act (AUCSA), so, again, federal law interpretation was unnecessary.

*Mobile Cnty. Bd. of Health v. Sackler*, 2020 WL 223618 (S.D. Ala. Jan. 15, 2020) was substantially the same. Plaintiffs asserted claims under Alabama law, including the Alabama Uniform Controlled Substances Act (AUCSA); Defendants removed under *Grable* arguing overlap with the federal Controlled Substances Act. But because federal law reliance was unnecessary, the court granted remand.

*Langford v. Richardson*, 2020 WL 1235529 (N.D. Ala. Mar. 13, 2020) arose from predatory lending tactics – undisclosed, abusive broker fees, unauthorized uses of credit records and fraudulent broker representations to potential lenders – that allegedly violated Alabama and federal laws and that breached the parties' contract. The court remanded the case after removal because the plaintiff could prevail on each claim without federal law reliance and, in any event, federal law interpretation was not a substantial issue necessarily disputed. Here, Plaintiffs did not assert claims under the Alabama antitrust statutes, so *Langford* does not support remand.

C. An Abundance of Persuasive Authority Supports Removal

The Removal Notice analysis was correct, and there is additional persuasive authority in agreement. *See AEP Excluded Assetco, LLC v. Bellaenergy, LLC*, 2024 WL 385695, at *4-5 (S.D. Tex. Feb. 1, 2024) (denying remand because counterclaim for delivery of non-conforming pipe required litigation of the alleged patent infringement of the allegedly counterfeit pipe); *Hawkins v. SSM Health Care Corp.*, 2023 WL 4363901, at *2 (E.D. Mo. July 6, 2023) (denying remand of suit for

abusive emergency room fees because the Missouri statute invoked by plaintiff covered only Medicaid and the applicable law was a federal regulation); *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 836-37 (D. Minn. 2023) (denying remand of suit for firearms dealer negligence because federal law set the standard of care); *Ball v. Baker*, 2022 WL 17808785, at * 4 (S.D.N.Y. Dec. 18, 2022) (denying remand because defendants breached their New York duties to plaintiffs only if they violated federal law); *Edwards v. Deloitte & Touche, LLP*, 2017 WL 1291994, at *3-5 (S.D. Fla. Jan. 18, 2017) (denying remand because the allegedly breached fiduciary duty could arise only from federal law); *In Re Nat'l Football League Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at *4-7 (C.D. Cal. Mar. 28, 2016) (denying remand because plaintiff's use of antitrust lingo in the California unconscionability claim was more than stylistic; federal antitrust law violation was essential to recovery).

A common thread running through the remand denial opinions is that federal question removal jurisdiction is established even if only one of multiple claims depends on a federal question. *See Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2nd Cir. 2005); *see also In re Nat'l Football League*, 2016 WL 1192642, at *5 ("[F]ederal jurisdiction over the entire case is proper even when only one asserted state law claim turns on a substantial federal question ... ."); *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) ("if even one

14

claim in the complaint involves a substantial federal question, the entire matter may be removed").

**2. The Remand Motion Imagines Alabama Law that Does Not Exist.**

The remand motion brief [Doc. 62] routinely asserts legal propositions without citing authority.[17] Some such assertions are flatly wrong – for example, the claim [Doc. 62, p. 2.] that Alabama recognizes a good faith and fair dealing employment tort. It does not. *See Grant v. Butler*, 590 So. 2d 254, 256 (Ala. 1991) ("Because the plaintiffs in this case sought to recover in tort under Alabama law for the bad faith breach of their employment contract, the trial court properly dismissed count three."); *Willmore-Cochran v. Wal-Mart Assocs., Inc.*, 919 F. Supp. 2d 1222, 1253 (N.D. Ala. 2013) (stating that Alabama "does not recognize such a cause of action in the employment context"); *Baugh v. Austal USA, LLC*, 2023 WL 2873381, at *23 (S.D. Ala. Apr. 10, 2023).[18] Most untethered are Plaintiffs' unsupported assertions that federal and Alabama antitrust law overlap jurisdictionally and that

---

[17] *See* Doc. 62, p. 2, lines 8-9 (good faith, fair dealing employment tort); p. 2, lines 16-18 (alleged tort duties "arise from state common law principles"); p. 8, lines 8-10 (Alabama at will doctrine unrelated to Alabama "wage fairness standards"); p. 9, lines 16-17 (Alabama wantonness criteria "must be applied without reference to federal antitrust law); p. 17, lines 5-6 ("plaintiffs plead state law causes of action that can be heard and decided by the state court, with no need to supplement with a parallel federal question"); p. 22, lines 11-13 ("here, Plaintiffs' claims can be resolved by applying Alabama law governing fraud, unjust enrichment, negligence, and wantonness without interpreting or enforcing the Sherman Act").

[18] *See also* Plaintiffs' car wreck analogy [Doc. 62, p. 10, lines 13-14]. If Plaintiffs were correct, Alabama could require the Dallas holder of a USDOT trucking license to have an Alabama license in order to make a drop in Dothan on his way to Destin.

Alabama permits use of its common law and other statutes to do the work of its antitrust statutes.[19]

When the Alabama legislature enacted its antitrust statute, ALA. CODE § 6-5-60, there was a clear demarcation between federal regulation of interstate commerce and state regulation of intrastate commerce. The Alabama Legislature chose to regulate only what Congress had not regulated and to authorize only claims that Congress had not authorized. That is why the Alabama statute regulates only *intra*state commerce. *See Abbott Laboratories v. Durrett*, 746 So. 2d 316, 338-39 (Ala. 1999); *Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc.*, 746 So. 2d 966, 972, 986-90 (Ala. 1999) ("Congress has no control over intrastate commerce . . . . No state may in any way enact legislation which in any way controls, regulates, or infringes on interstate commerce." (internal citations omitted)). Plaintiffs wisely chose not to assert Alabama antitrust claims here due to the interstate nature of their allegations.

The remand motion brief [Doc. 62] represents, without citing authority, that Alabama permits claims under Alabama common law and alternative statutes to do the work that the Legislature reserved for the Alabama antitrust statute. Not so. *See Vandenberg v. Aramark Educ. Servs., Inc.*, 81 So. 3d 326, 333, 338-39, 342-43 (Ala.

---

[19] *See also* Plaintiffs' puzzling reference to the Alabama consumer protection law [Doc. 62, p. 7], which protects only "consumer[s]" who "buy[] goods or services." *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997).

2011) (affirming dismissal of conversion and alternative statutory claims).[20] The reasoning of *Vandenberg* applies here: had simple common law torts addressed wage fixing, there would have been no need for an antitrust statute. In short, Alabama challenges to *intra*state antitrust schemes are authorized only under Alabama's antitrust statute and claims for relief from *inter*state conspiracies have no Alabama law basis; only federal law offers remedies. That is not because Congress said so (federal preemption); it's because the Alabama Legislature said so.

3. **The Remand Motion Imagines a Preemption Argument that Defendants Did Not Make.**

The bulk of the remand motion brief [Doc. 62, beginning on p. 1] refutes federal preemption of Alabama antitrust regulation. Defendants have not made that argument. The Removal Notice plainly asserted [Doc. 1, p. l] that Plaintiffs necessarily rely on federal antitrust law because Plaintiffs have no basis in Alabama law.[21] It's federal law or nothing.

Preemption was not argued in Removal Notice paragraph 7. [Doc. 1, p. 3, lines 9-22]. Instead, the point there was that Alabama law will not allow an Alabama court to conjure new Alabama tort law providing antitrust injury relief contrary to federal

---

[20] Any such attempt also would run afoul of the separation of powers doctrine based on Sections 42, 43 of the Alabama Constitution. *See Dentson v. Eddie & Lee Bus Sales, Inc.*, 491 So. 2d 942 (Ala. 1986); *Ex Parte Jenkins*, 723 So.2d 649, 654-55 (Ala. 1998); *Ex Parte James*, 836 So. 2d 813 (Ala. 2002).

[21] The remand motion brief expressly disavows reliance on Alabama antitrust statutes. *See* Doc. 62, p. 5, lines 12-13.

law because, among other things, Alabama courts must follow federal antitrust law when adjudicating Alabama antitrust disputes. Again, it's federal antitrust law or nothing for Plaintiffs.

No variant of the word "preempt" even appears in the Removal Notice. Clearly, Plaintiffs' refutation of federal preemption[22] is a "straw man argument." *See Hart v. Suarez*, 2024 WL 1941682, at *5-6 (M.D. Ala. May 2, 2024) (categorically rejecting a "straw man argument" made by a defendant seeking summary judgment in order to feign absence of a fact dispute); *see also Beaulieu Group, LLC v. Mohawk Carpet Distrib., Inc.*, 2016 WL 11745981, at *4 (N.D. Ga. Aug. 3, 2016) (rejecting a plaintiff's tactical mis-statement of a defense argument).

### 4. The Remand Motion Imagines a Complaint that the Plaintiffs Did Not File.

Plaintiffs re-imagine their pleading in order to claim the purported protection of case law based on materially different disputes. The remand motion brief [Doc. 62] cites opinions remanding cases filed in state courts under state antitrust statutes. The Plaintiffs' Complaint, however, alleges an *inter*state wage rigging conspiracy that allegedly caused nationwide antitrust injuries, exceeding the *intra*state commence scope of the Alabama antitrust statute.[23]

---

[22] *See* Doc. 62, p. 5, lines 3, 9; p. 6, line 13; p. 10, lines 16-18; p. 11, lines 3-4.
[23] *See* the argument under heading 2.

The table below quotes numerous Complaint [Doc. 1-1] passages that assert the interstate nature of Defendants' alleged wrongdoing.

| Doc. 1-1, p. :line | Text denoting interstate nature of alleged wrongdoing |
|---|---|
| 6:10 | "America's largest poultry processing companies" |
| 6:11-13 | "corporate giants privately colluded to systematically fix, depress and stabilize the compensation paid to hundreds of thousands" |
| 23:30-31 | "multi-decade conspiracy among the nation's dominant poultry processors" |
| 24:2 | "suppressing the compensation of hundreds of thousands" |
| 24:18, 23-24, 28-29 | "operated poultry facilities across the United States" |
| 25:7 | "poultry facilities across the United States" |
| 26:23-24 | "The defendant processors collectively control the majority of the U.S. poultry market" |
| 29:26 | "95% of U.S. poultry processors" |
| 35:11 | Industry-wide conspiracy meetings regularly held in "Destin, Florida." |

A May 2025 letter to some *Jien* defense counsel on behalf of "3,500" *Jien* opt-outs described the dispute as a "Wage and Hour Anti-Trust class action" and said that, absent settlement, Plaintiffs separately would pursue "these cases." *See*

Exhibit 1 hereto.[24] That they did is evident; the Plaintiffs' Complaint is written in the vernacular of federal labor antitrust class actions.

The Sherman Act prohibits contracts, combinations, and conspiracies in restraint of trade. 15 U.S.C. § 1. The table below shows the Complaint's ritualistic use of words and phrases that commonly appear in federal antitrust statutes, regulations and judicial opinions.

| Doc. 1-1 p.: line | Word or phrase | Federal antitrust usage example |
| --- | --- | --- |
| 6:16 | "unlawful cartel" | *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 892 (2007) |
| 24:1 | "eliminate competition" | *U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 217 (1940) |
| 26:8 | "competitively sensitive" | *In Re Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371 (MDL No. 3110 2024) |
| 26:20 | "collusive scheme" | *Am. Proteins, Inc. v. River Valley Ingredients, LLC*, 640 F. Supp. 3d 1364, 1371 (N.D. Ga. 2022) |

[24] FED. R. EVID. 408 does not bar the Court's consideration of this Exhibit. First, it is not clear that it even constitutes an offer to compromise. It seeks negotiation, but it neither offers a compromise nor constitutes a statement made during compromise negotiations. Moreover, even if it is subject to Rule 408, it is not offered "to prove or disprove the validity or amount of a disputed claim" or to impeach a witness – FED. R. EVID. 408(a) – but is offered "for another purpose" – FED. R. EVID. 408(b), namely to show that Plaintiffs have characterized their case as stating federal not state, claims. Such letters commonly are considered in jurisdiction disputes. "The advisory committee's notes to the 1972 Proposed Rules indicate that the situations mentioned in Rule 408 are "illustrative" and do not foreclose offering compromise evidence for other purposes." *Coleman v. NPC Int'l Inc.*, 2009 WL 10675080, at *1 (N.D. Fla. Mar. 4. 2009); *White v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 13102525, at *2 (M.D. Fla. May 16, 2012) ("other courts have reasoned that Rule 408 does not "either expressly or implicitly disallow the use of [a settlement or demand letter] to determine the amount in controversy for purposes of determining federal jurisdiction") (citations omitted).

| 26:25 | "market power" | *Ohio v. Am. Express Co.*, 585 U.S. 529, 530 (2018) |
|---|---|---|
| 27:14 | "contract, combination, and conspiracy" | 15 U.S.C. §1; *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010) |
| 31:10 | "policing and enforcement" | *Natchitoches Parish Hosp. Service Dist. V. Tyco Int'l, Ltd.*, 2009 WL 4061631, at *6 (D. Mass. Nov. 20, 2009) |
| 33:7 | "competitive market" | *Brown v. Pro Football, Inc.*, 518 U.S. 231, 255 (1996) |
| 34:16 | "lawful … benchmarking" | *In Re Wholesale Grocery Prods. Antitrust Litig.*, 2018 WL 3862773, at *8 (D. Minn. Aug. 14, 2018) |
| 34:24 | "coordinated scheme" | *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1240 (N.D. Ala. 2019) |
| 39:19 | "industry benchmarking" | *In Re Broiler Chicken Grower Antitrust Litig.*, 2024 WL 2194349, at *12 (E.D. Okla. May 15, 2024) |
| 41:21 | "artificially fix" | *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 131 (1984) |
| 42:3 | "legitimate market forces" | *Automotive Alignment & Body Service, Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 729 (11th Cir. 2020) |
| 43:2 | "unlawfully restrain trade" | *N. Secs. Co. v. U.S.*, 193 U.S. 197, 362 (1904) |

Synonyms for "restrain" are "depress," "fix," "limit," "rig," "stabilize," "suppress." The word "market" appears 11 times in the Complaint.[25] Variants of "compete" – "competitive," "competition," "competing," "competitively" – occur 58 times.[26] Synonyms for "restrain" appear 173 times.[27] This surpasses the federal antitrust vocabulary of the complaint removed successfully in *In Re Nat'l Football League Sunday Ticket Antitrust Litigation*, 2016 WL 1192642, at *4-7 (denying remand).

[25] "**Market**" [Doc. 1-1] at p. 21, line 24; p. 24, line 4; p. 26, lines 24, 25, 29; p. 33, line 7; p. 34, line 11; p. 35, line 8; p. 42, line 3; p. 43, lines 2, 23.

[26] "**Compete**" [Doc. 1-1] at p. 6, lines, 11, 14; p. 24, lines 1, 4; p. 26, lines 8, 24, 29; p. 27, lines 3, 24; p. 28, lines 4, 6, 30; p. 29, lines 19, 21, 28; p. 30, lines 2, 6; p. 31, lines 3, 5, 15, 19, 28; p. 32, lines 2, 7, 21; p. 33, lines 7, 19, 27, 30; p. 34, lines 7, 10; p. 35, lines 4, 6, 11, 15, 21; p. 36, lines 2, 7, 14, 20, 22, 26; p. 37, lines 2, 4, 7, 15, 20, 25, 30; p. 38, lines 26, 29; p. 39, lines 4, 7, 10; p. 40, line 7; p. 41, line 26; p. 43, lines 6, 23.

[27] "**Restrain**" [Doc. 1-1] at p. 43, line 2. "**Depress**" [Doc. 1-1] at p. 6, lines 12, 17; p. 21, line 28; p. 24, lines 20, 26; p. 25, lines 3, 6, 14, 18; p. 27, lines 10, 15; p. 33, line 31; p. 36, lines 3, 17, 27; p. 37, line 8; p. 39, line 11; p. 40, line 10; p. 42, line 5; p. 43, line 10. "**Fix**" [Doc. 1-1] at p. 6, line 12; p. 24, lines 20, 26; p. 25, lines 3, 6, 14, 18; p. 26, line 11; p. 27, line 14; p. 28, line 16; p. 32, line 23; p. 36, line 18; p. 40, line 9; p. 41, line 21; p. 45, line 11. "**Stabilize**" [Doc. 1-1] at p. 6, line 12; p. 27, line 15; p. 31, lines 15, 32; p. 36, line 26; p. 38, line 13; p. 39, line 22; p. 40, line 21. "**Suppress**" [Doc. 1-1] at p. 6, line 16; p. 7, lines 6, 11, 16, 21, 26; p. 8, lines 1, 6, 11, 16, 21, 26, 31; p. 9, lines 4, 9, 14, 19, 24, 29; p. 10, lines 2, 7, 12, 17, 22, 27; p. 11, lines 1, 6, 11, 16, 21, 26, 31; p. 12, lines 4, 9, 14, 19, 24, 29; p. 13, lines 2, 7, 12, 17, 23, 27; p. 14, lines 1, 6, 11, 16, 21, 27, 31; p. 15, lines 4, 9, 14, 19, 24, 29; p. 16, lines 2, 7, 12, 17, 22, 27; p. 17, lines 1, 6, 11, 16, 21, 26, 31; p. 18, lines 4, 9, 14, 19, 24, 29; p. 19, lines 2, 7, 12, 17, 22, 27; p. 20, lines 1, 6, 11, 16, 21, 26, 31; p. 21, lines 4, 9, 14; p. 24, line 2, 32; p. 26, line 12; p. 27, lines 9, 11; p. 28, line 31; p. 31, line 6, 11, 25, 32; p. 32, lines 22, 29; p. 33, lines 24, 31; p. 34, lines 18, 22; p. 36, lines 3, 23, 25; p. 37, line 8; p. 38, lines 13, 22; p. 39, lines 11, 22, 27; p. 40, line 21; p. 41, lines 1, 9, 21, 27; p. 42, line 22; p. 43, lines 3, 19; p. 44, lines 7, 19; p. 45, line 17; p. 46, line 3.

Plaintiffs could have filed an Alabama intrastate antitrust action, over which Alabama courts could have had jurisdiction,[28] and on which they could rule without relying on federal law, but Plaintiffs chose not to file that suit. This Court has federal question subject matter jurisdiction of the Complaint actually filed by Plaintiffs because it alleges, in federal "Anti-Trust class action" terms, a national antitrust conspiracy beyond the scope of the Alabama antitrust statutes. Thus, Plaintiffs depend on federal antitrust law to supply essential elements of their Alabama tort claims.

5. **The Remand Motion Fails to Acknowledge that Plaintiffs' Success Requires Federal Law Developments**.

Plaintiffs' attack on *Grable* prong 4 – the federalism issue – deserves further attention. Sometimes, a federal statute may be referenced to determine an Alabama tort duty without creating federal jurisdiction, but those federal rules tend to be settled, clear, and often empirical – OSHA safety standards, for example – leaving the Alabama court no policy-making discretion. *See Elder v. E.I. DuPont de Nemours and Co., Inc.*, 479 So. 2d 1243, 1247-48 (Ala. 1985) (OSHA safety regulation admissible but not controlling on duty of care); *Lands v. Ward*, 349 So.

---

[28] Had Plaintiffs filed an Alabama antitrust action, an Alabama court would be a proper forum. *See, e.g., Lovelace v. Amerada Hess Corp.*, 1997 WL 33806580, at *1 (S.D. Ala. Apr. 1, 1997) (remand where plaintiffs sued under the Alabama antitrust statute); *Baird v. PPG Indus., Inc.*, 2017 WL 1300222, at *1 (N.D. Ala. Apr. 7, 2017) (same). That suit would have been dismissed for the reasons explained under Argument heading 2, but it could not have been removed based on federal question jurisdiction.

3d 219, 223 (Ala. 2021) (similarly, Federal Motor Carrier Safety Administration "motor carrier" status relevant to Alabama duties). Federal antitrust law standards are developed and applied very differently, involving much more judicial discretion. *See Nat'l Soc'y of Pro. Eng'rs v. U.S.*, 435 U.S. 679, 688 (1978) ("Congress, however, did not intend the text of the Sherman Act to delineate the full meaning of the statute or its application in concrete situations. The legislative history makes it perfectly clear that it expected the courts to give shape to the statute's broad mandate by drawing on common-law tradition."); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (similar comments). Plaintiffs' theory would require an Alabama state court to determine the reach and the application of federal antitrust law in labor markets and assess the application of federal antitrust collective bargaining immunity. Determinations implicating uniquely federal interests should be made only in federal court.

More particularly, the Complaint suggests, by omission of causation facts, that Plaintiffs need not prove actual wage suppression because employers sharing compensation information is a per se federal antitrust violation. There is no such governing authority. *See U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) (stating that the Court has "held that such exchanges of information do not constitute a per se violation of the Sherman Act" because "such practices can in certain

circumstances increase economic efficiency and render markets more, rather than less, competitive"). Plaintiffs must persuade a court to create that precedent.

Proof of a relevant market is an essential element of a federal antitrust claim[29] but the Complaint omits that basic allegation. Plaintiffs seem to believe that their common Alabama residences and preference for poultry industry employment satisfy their obligation to prove a relevant market. There is no such governing authority. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) ("Although the 'parameters of a given market are questions of fact,' [. . .], antitrust plaintiffs still must present enough information in their complaint to plausibly suggest the contours of the relevant geographic and product markets."). Again, new federal law must be made if Plaintiffs are to prevail on that point.

Because allegedly "suppressed" wages were collectively bargained,[30] Plaintiffs must also persuade a court to narrow or to create an exception to collective bargaining antitrust immunity that is well settled in federal law. *See* 15 U.S.C. § 17; *Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union 100*, 421 U.S. 616, 622 (1975); *Brown v. Pro Football, Inc.*, 518 U.S. 231, 237 (1996); *Clarett v. Nat'l Football League*, 369 F.3d 124, 143 (2d Cir. 2004).

---

[29] *L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414, 422 (11th Cir. 1984); *see also Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016).
[30] The Complaint [Doc. 1-1] complains, at p. 31, line 23, that Agri Stats did not offer its reports to "unions" and, at p. 41, line 29, alleges that, had Plaintiffs been aware of the alleged collusion, that knowledge "would have changed their employment and bargaining decisions."

Plaintiffs' need for favorable federal antitrust law developments more than satisfies *Grable* prong 4.

**6. Fees and Costs**

The remand motion brief [Doc. 62, pp. 22-24] closes by seeking an award of fees and costs, asserting that Defendants lacked an objectively reasonable basis for removal. The day may come when fees and costs should be awarded – likely to Defendants – but today is not that day. The weight of authority clearly is on the defense side of this dispute.

The U.S. Supreme Court has established the standard for when to award fees under § 1447(c): "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The case quoted extensively by Plaintiffs – *Gray v. New York Life Ins. Co.*, 906 F. Supp. 628 (N.D. Ala. 1995) – was decided before *Martin* and is not the correct standard.

Defendants only needed an objectively reasonable basis for removal under the *Grable* doctrine. In *Meyer v. Health Mgt. Assoc., Inc.*, 841 F. Supp. 2d 1262 (S.D. Fla. 2012), defendants removed a case involving Medicare laws under the *Grable*

doctrine, and the Court ultimately remanded. In denying the request for attorneys' fees, the Court reasoned:

> Although this removal was not ultimately successful, the Court is unable to conclude that HMA lacked an objectively reasonable basis for its attempt. "Removal is not objectively unreasonable simply because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Lewis v. Tulalip Hous. Ltd. P'ship No. 3*, 2011 WL 6140881, at *4 (W.D.Wash. Dec. 9, 2011). This case does involve some aspect of federal law and the arguments in favor of removal jurisdiction, while not persuasive in the end, appear to have been made in good faith, on the basis of the particular facts and circumstances at issue. *See, e.g., Baptist Hosp. of Miami*, 2011 WL 2084003, at *6 (no fee award where removal under *Grable & Sons* was not objectively unreasonable); *Fla. Dep't of Fin. Servs. v. Universal Health Care Ins.*, 2008 WL 268802, at *1 (N.D. Fla. Jan. 30, 2008) (same).

*Id*. at 1273. *See also Miami Beach Cosmetic and Plastic Surgery Center v. Blue Cross and Blue Shield of Florida, Inc*., 947 F. Supp. 2d 1375, 1382 (S.D. Fla. 2013) (no fees awarded because defendants had an objectively reasonable argument for federal question jurisdiction); *Ladies Mem. Assoc., Inc. v. City of Pensacola, Fl*., 662 F. Supp. 3d 1212, 1218 (N.D. Fla. 2023) (refusing to award fees and noting that "[i]t is the job of attorneys to make arguments, and it is the job of judges to decide if the arguments are winners or losers.").

As explained at length above, Defendants had more than an objectively reasonable basis for removal. No fees should be awarded to Plaintiffs even if remand should be deemed proper.

## Conclusion

Plaintiffs are stuck with the federally dependent Complaint that they filed, and with this Court's consequent federal question jurisdiction. They're also limited to the unpersuasive arguments that they made in the Motion to Remand and supporting brief [Docs. 61, 62]. *See Thompson v. Alabama*, 428 F. Supp. 3d 1296, 1307 (M.D. Ala. 2019) (citing *Hinson v. Chelsea Indus., Inc.*, 542 F. Supp. 2d 1236, 1248 (M.D. Ala. 2008)) ("New evidence is not properly considered if offered for the first time in support of a reply brief[.]"); *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 4686353, at *1 (N.D. Ala. Feb. 28, 2019) ("a party cannot introduce new evidence or new arguments in a reply brief"). This removal should stick.

Date: March 16, 2026.

Respectfully submitted,

<u>s/ R. Pepper Crutcher, Jr.</u>
R. Pepper Crutcher, Jr (ASB-1232-I20Z)
**BALCH & BINGHAM LLP**
188 E. Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: (601) 965-8158
Facsimile: (601) 961-4466
Email: pcrutcher@balch.com

John G. Smith (ASB-8146-T68J)
**BALCH & BINGHAM LLP**
445 Dexter Avenue, Suite 8000
Montgomery, AL 36104
Telephone: (334) 834-6500
Facsimile: (866) 830-1504
Email: jgsmith@balch.com

Chuck Burkhart (ASB-7825-T76C)
Jack Surber (ASB-2080-T149)
**BALCH & BINGHAM LLP**
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799
Email: cburkhart@balch.com
Email: jsurber@balch.com

*Attorneys for Wayne Farms LLC*
*and Wayne-Sanderson Farms LLC*

 *s/ Joshua Jonathan Jackson*
Joshua Jonathan Jackson
**SAMFORD & DENSON, LLP**
PO Box 2345
Opelika, AL 36803-2345
334-745-3504
Email: jackson@samfordlaw.com

William L. Monts III (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
202-637-6440
Email: william.monts@hoganlovells.com

*Attorneys for Agri Stats, Inc.*

 *s/ Josh Chandler Harrison*
Josh Chandler Harrison
Bryan Andrew Grayson
**OGLETREE DEAKINS NASH SMOAK & STEWART PC**
420 20th Street North; Suite 1900
Birmingham, AL 35203
205-328-1900
Email: josh.harrison@ogletreedeakins.com
Email: bryan.grayson@ogletree.com

29

J. Douglas Baldridge (admitted *pro hac vice*)
Danielle Foley (admitted *pro hac vice*)
Lisa Jose Fales (admitted *pro hac vice*)
Andrew Hernacki (admitted *pro hac vice*)
**VENABLE LLP**
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300
Email: jdbaldridge@venable.com
Email: drfoley@venable.com
Email: ljfales@venable.com
Email: athernacki@venable.com

*Attorneys for Perdue Farms, Inc.*
*and Perdue Foods, LLC*

s/ *Thomas Frank Kelly, Jr.*
Thomas Frank Kelly, Jr.
**THE KELLY LAW FIRM PC**
P.O. Box 605
Clayton, AL 36016
334-775-8009
Email: tfkelly@bellsouth.net

Carmine Zarlenga (admitted *pro hac vice*)
Katherine Monks Bleicher (admitted *pro hac vice*)
Oral Pottinger (admitted *pro hac vice*)
**MAYER BROWN LLP**
1999 K Street NW
Washington, DC 20006
202-663-3000
Email: czarlenga@mayerbrown.com
Email: kbleicher@mayerbrown.com
Email: opottinger@mayerbrown.com

*Attorneys for Foster Poultry Farms, LLC*

30

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following CM/ECF participant(s) electronically this the 16th day of March, 2026:

Christina Diane Crow
Carolyn Elizabeth Littell Courson
**Jinks Crow, PC**
219 Prairie St N.
Union Springs, AL 36089
334-738-4225
Fax: 334-738-4229
Email: christy.crow@jinkscrow.com
Email: lisa.littell@jinkscrow.com

Kijana Djmon Mitchell
**Jinks Crow, PC**
324 Catoma Street
Montgomery, AL 36104
334-738-4225
Email: kijana.mitchell@jinkscrow.com

*s/ R. Pepper Crutcher, Jr.*
R. Pepper Crutcher, Jr

25672786.4